ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JIMMY SEPÚLVEDA LAVERGNE, ET ALS<br><br>Apelados<br><br>V.<br><br>PUERTO RICO HIGH SCHOOL ATHLETIC ALLIANCE, CORP., por conducto de su Presidente, JOHN M. ROMÁN<br><br>Apelantes<br><br>COLEGIO SAN IGNACIO DE LOYOLA, INC.<br><br>Parte con Interés | KLAN202400960 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Bayamón<br><br>Sala: 503<br><br>Caso Núm. BY2024CV05482<br><br>Sobre:<br><br>Injunction Preliminar y Permanente, Sentencia Declaratoria |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Prats Palerm y el juez Cruz Hiraldo[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

Comparece ante nos Puerto Rico High School Athletic Alliance, Corp., (en adelante, por sus siglas, PRHSAA o la Liga) mediante un recurso de *Apelación.* Nos solicita la revocación de la determinación emitida y notificada el 9 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del referido dictamen, el foro primario declaró *Ha Lugar* la *Demanda Jurada,* y en consecuencia, emitió el interdicto permanente solicitado por la parte demandante-apelada. En vista de ello, dejó sin efecto la sanción probatoria impuesta al programa deportivo del Colegio San Ignacio (en lo sucesivo, CSI).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 17 de septiembre de 2024, la parte apelada compuesta por los padres de unos estudiantes-atletas del CSI instó la *Demanda Jurada* de

---

[1] Véase Orden Administrativa OATA-2024-115.

epígrafe contra PRHSAA e incluyó al CSI como parte con interés.[2] Mediante esta acción legal impugnó unas sanciones impuestas por la Liga al referido colegio. Según relató en sus alegaciones, PRHSAA es una corporación de recreación y deportes la cual promueve la actividad atlética de escuelas públicas y privadas de Puerto Rico. También expresó que el CSI era una de las escuelas afiliadas a PRHSAA. En cuanto a las sanciones impuestas, precisó que el 19 de abril de 2024, PRHSAA informó al CSI sobre la determinación de sancionarle por incluir en un torneo a un jugador que no cumplía con los requisitos establecidos en la reglamentación de la entidad demandada. De acuerdo con las alegaciones, esta situación tuvo como consecuencia prohibir la participación de los estudiantes del CSI en los torneos de postemporada de la Liga, lo cual, a su vez, menoscabó sus oportunidades de obtener premios y becas universitarias.

Ante tales hechos, la parte apelada alegó, que el referido incumplimiento ocurrió por una inadvertencia administrativa tanto de PRHSAA y CSI. Sostuvo, que las referidas sanciones consistieron en una multa total de $1,200.00; la devolución del premio ganado en uno de los eventos deportivos; y la imposición de un estado probatorio a todo el programa atlético del colegio durante el año escolar 2024-2025. Sobre este particular, argumentó que la medida sancionadora de PRHSAA resultó arbitraria, irrazonable y les provocaba daños a los estudiantes, toda vez que lacera su posibilidad de acceder a las universidades con programas deportivos y el obtener becas por deporte. Además, puntualizó que tal proceder es (1) contrario a la reglamentación de PRHSAA, (2) menoscaban los derechos contractuales de las partes, y (3) violenta el debido proceso de ley de los estudiantes, pues no tuvieron la oportunidad de expresarse en cuanto a las sanciones. Entre otros extremos, peticionó un injunction

---

[2] Apéndice de la parte apelante, págs. 1-32. Conviene especificar, que las siguientes personas instaron la reclamación presente: el señor Jimmy Sepúlveda Lavergne por sí y en representación de su hijo menor de edad JASN; el señor Luis Fernández Neumann y la señora Suzette Castellano Martín, por sí y en representación de su hijo menor de edad EFC; el señor Jorge Suárez Colón por sí y en representación de su hijo JCSF; la señora Marlene De Varona Vega y el señor Hugo Francisco Córdova Ayuso por sí y en representación de su hijo menor de edad HFCD.

preliminar y permanente a los fines de dejar sin efecto la sanción probatoria impuesta a todo el programa atlético del CSI.

Examinada la *Demanda Jurada*, el 17 de septiembre de 2024, el foro sentenciador notificó una *Orden*. Mediante esta, señaló una vista argumentativa a celebrarse el 25 de septiembre de 2024 para auscultar la procedencia del interdicto preliminar y permanente solicitado.

Cercana la fecha dispuesta para celebrar la referida vista, el 24 de septiembre de 2024, PRHSAA presentó una *Moción de Desestimación* a tenor de la Regla 10.2 de Procedimiento Civil.[3] Sostuvo que no procedía la solicitud de injunction al amparo de La Carta de Derechos del Estudiante de Puerto Rico, dado que PRHSAA no era una entidad escolar a la cual le pudieran aplicar las disposiciones de la referida ley. De igual modo, argumentó que la parte apelada no cumplía con las doctrinas de legitimación activa y parte indispensable. Además, esgrimió que los estudiantes no eran terceros beneficiarios de la relación contractual existente entre PRHSAA y CSI. Asimismo, añadió que la sanción impuesta era una medida legítima y conforme a sus *By-Laws.* En vista de ello, solicitó la desestimación de la *Demanda Jurada*.

En reacción, el 25 de septiembre de 2024, la parte apelada presentó una *Oposición a Moción de Desestimación.*[4] Contrario a lo aducido por PRHSAA, expuso que surge del cuerpo normativo adoptado por la Liga, que esta ejerce una función educativa al servicio y beneficio de los estudiantes-atletas. Por consiguiente, argumentó a favor de la aplicabilidad de La Carta de Derechos del Estudiante de Puerto Rico, pues los estudiantes tenían derecho a un debido proceso de ley respecto a los procedimientos disciplinarios. De otra parte, sostuvo que existía una relación contractual entre los estudiantes, el CSI y PRHSAA, toda vez que dicha institución privada tenía la facultad de imponer sanciones a escuelas, equipos y personas en su carácter individual. En virtud de lo expuesto, esgrimió que

---

[3] Apéndice de la parte apelante, págs. 274-301.
[4] Apéndice de la parte apelante, págs. 355-375.

su legitimación activa se ampara en la existencia de un daño real ocasionado por la prohibición a participar de la postemporada de la Liga. Por tanto, solicitó al foro *a quo* que declara *No Ha Lugar* la *Moción de Desestimación*, y consecuentemente emitiera el injunction peticionado.

Por su parte, el 25 de septiembre de 2024, CSI presentó una *Moción en Cumplimiento de Orden*.[5] Aseveró que con anterioridad a la presentación de la *Demanda Jurada* le comunicó a la parte apelada su intención de mantenerse al margen del litigio. Adujo que no es una parte indispensable de la acción legal radicada. Por tanto, razonó que el tribunal tiene facultad para conceder un remedio sin acumulación en el pleito. Así establecido, solicitó la desestimación de la causa de acción entablada en su contra al amparo de la Regla 10.2(5) de Procedimiento Civil.

Evaluados los argumentos de las partes, el 26 de septiembre de 2024, el foro sentenciador emitió *Resolución,* en la cual declaró *No Ha Lugar* la *Moción de Desestimación* presentada por PRHSAA. En la misma fecha, dictó una segunda *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción en Cumplimiento de Orden* presentada por CSI.

Así las cosas, el 27 de septiembre de 2024, PRHSAA presentó su C*ontestación a la Demanda.[6]* En esencia, negó las alegaciones instadas en su contra y levantó las siguientes defensas afirmativas: (1) falta de legitimación activa, (2) inexistencia de relación contractual, (3) falta de parte indispensable y (3) ausencia de competencia del foro primario, entre otros extremos. En esa dirección, aseveró que los estudiantes fueron escuchados a través de la institución educativa a la cual asisten. A su vez, indicó que siguió el proceso establecido en los By-Law al imponer la sanción impugnada. Por tanto, solicitó que el tribunal declarara *No Ha Lugar* la reclamación instada en su contra, pues los daños alegados no guardan relación con los hechos del caso.

---

[5] Apéndice de la parte apelante, págs. 376-379.
[6] Apéndice de la parte apelante, págs. 405-429.

Por su parte, el 30 de septiembre de 2024, el CSI sometió su *Contestación a la Demanda*.[7] Como argumento central, expuso que agotó todos los remedios que tuvo disponible a los fines de evitar la imposición de la sanción probatoria. Admitió, sin embargo, que tanto el colegio como PRHSAA cometieron un error administrativo el cual permitió que un jugador inelegible participara en el equipo de baloncesto y voleibol. No obstante, destacó que dicho error fue involuntario, cometido de buena fe y sin ánimo de engañar o defraudar las normas deportivas. En vista de ello, arguyó que la parte demandante carece de una acción válida en su contra, pues actuó dentro de los parámetros de su autoridad y capacidad legal.

Ese día, en atención a la inmediatez del caso, el foro de instancia celebró una *Vista de Estado de los Procedimientos* en la cual ordenó a las partes a someter los hechos estipulados y en controversia en o antes del 2 de octubre de 2024.[8] Igualmente dispuso celebrar la *Vista de Injunction Permanente* el 4 de octubre de 2024. En respuesta a tal decreto, ambas partes sometieron una *Moción Conjunta en Cumplimiento de Orden.* En este documento identificaron la prueba documental estipulada, y a su vez, establecieron los hechos incontrovertidos más resumieron aquellos en controversia. [9]

Tal como el foro primario estableció, el juicio se celebró en la fecha previamente anunciada. En ese proceso comparecieron los apelados, así como las entidades demandadas acompañados de sus representantes legales. Como testigos de la parte demandante declararon el señor Jimmy Sepúlveda y el señor Luis Fernández, ambos en representación de sus respectivos hijos, quienes son estudiantes-atletas. En calidad de testigo de la PRHSAA declaró el señor John Román, quien es el presidente y el representante de la liga deportiva apelante.[10]

Tras concluir el desfile de la prueba oral de la parte apelada, PRHSAA presentó en corte abierta una *Moción de Desestimación al Amparo de la*

---

[7] Apéndice de la parte apelante, págs. 430-436.
[8] Apéndice de la parte apelante, págs. 460-466.
[9] Apéndice de la parte apelante, págs. 437-449.
[10] Apéndice de la parte apelante, págs. 470-472.

*Regla 39.2(c) de Procedimiento Civil.*[11] En consecuencia, los demandantes solicitaron su denegatoria. No obstante, el tribunal de instancia resolvió que "[a] solicitud de moción de desestimación presentada por la licenciada Alvarado, se declara *No Ha Lugar*".[12] Eventualmente, el foro sentenciador decretó la continuidad de los procedimientos para escuchar el testimonio del presidente de PRHSAA.

Debidamente sometido el caso, el 7 de octubre de 2024, el CSI presentó una *Moción Reiterando Solicitud.*[13] Insistió que la parte demandante-apelada no presentó una solicitud de remedio en su contra, por lo que, nuevamente peticionó su desestimación. No obstante, el 9 de octubre de 2024, el tribunal emitió *Resolución* declarando *No Ha Lugar* la desestimación solicitada.[14]

Ese día, el foro primario, también, dictó *Sentencia* en la que declaró *Ha Lugar* la *Demanda Jurada* en todos sus extremos.[15] En lo pertinente, formuló las siguientes determinaciones de hechos:

> 1. Puerto Rico High School Athletic Alliance Corp. ("PRHSAA") es una corporación sin fines de lucro organizada bajo las leyes de Puerto Rico para participar en la gestión de las actividades deportivas y fomentar el desarrollo, la mejora y la promoción de la aptitud física y el deporte. Su presidente es el Sr. John M. Román. La PRHSAA es una organización voluntaria de carácter privado compuesta por 27 escuelas privadas con el propósito de proporcionar un contexto estructurado y para la competencia atlética entre las escuelas miembro.
>
> 2. La PRHSAA se rige por una Constitución y sus Estatutos o "By-Laws".
>
> 3. La Constitución de la PRHSAA estipula que todas las escuelas miembros se dedicarán a los propósitos de la Alianza y promoverán competencias atléticas limpias y justas. Específicamente, el Artículo II de la Constitución de la PRHSAA dispone que: "The primary purpose of the Alliance is to provide a structured and well organized context for athletic competition among member schools, facilitating each school's effort to fulfill its educational objectives. The Alliance seeks to initiate, promote and maintain a spirit of athletics and good sportsmanship among member schools. The Alliance and its member schools recognize that interscholastic athletic activities are an integral part of the total secondary school (7-12) educational program. The interscholastic athletic program has as its purpose to provide educational experiences not otherwise provided in the curriculum, which will develop learning outcomes in the areas of knowledge, skills and emotional patterns and will contribute to the integral development of the student-athlete. All member schools shall

---

[11] Apéndice de la parte apelante, págs. 472-473.
[12] Apéndice de la parte apelante, pág. 473.
[13] Apéndice de la parte apelante, págs. 467-469.
[14] Apéndice de la parte apelante, págs. 475-476.
[15] Apéndice de la parte apelante, págs. 477-492.

be dedicated to the purposes of the Alliance and will promote clean, fair and well-organized athletic contests. They will help to promote sportsmanship among and between teams and in general maintain adequate control of players, spectators and all other persons or groups concerned. All coaching staff should be properly attired, identified by a polo or T-shirt with the name of the school he/she is representing during all official athletic contests. The interschool activities sponsored by the Alliance and/or its member schools shall be primarily for the benefit of the students who participate in them and not for the benefit of the sponsoring institutions.

4. Cada miembro de la Alianza tiene dos (2) representantes, el Director Atlético y un representante de la Administración de la escuela. (Art. III, sección 2 de la Constitución).

5. El Comité Ejecutivo (o "Executive Committee") tiene la responsabilidad de implementar y hacer valer la Constitución de la Alianza.

6. El Comité Ejecutivo está compuesto por el Presidente, Vicepresidente y Secretario de la PRHSAA, cuatro Directores Atléticos y tres Administrativos.

7. En todo momento pertinente a las alegaciones, el Sr. Ángel Pagán (Vicepresidente de la Liga) era el Presidente o "Chairman" del Comité Ejecutivo del PRHSAA.

8. El Comité Ejecutivo designa un "Sport Commissioner" sobre el que recae la función de preparar los itinerarios de juegos, hacer cumplir los mismos y asegurar que los jugadores participantes sean elegibles.

9. El Colegio de San Ignacio de Loyola, Inc. ("CSI"), es una corporación sin fines de lucro organizada bajo las leyes de Puerto Rico para ofrecer, como colegio jesuita, una formación integral católica. CSI está acreditada por el Middle States Association y está registrado con el Departamento de Estado.

10. Los asuntos administrativos del CSI son manejados por su personal.

11. CSI es miembro del PRHSAA hace más de treinta (30) años.

12. Algunos de los equipos deportivos y estudiantes atletas del CSI participan en la Liga de la demandada PRHSAA. Entre tales equipos se encuentran los de voleibol, baloncesto, soccer y béisbol.

13. La Liga es un foro deportivo para las escuelas que forman parte del PRHSAA.

14. Marlene de Varona Vega y Hugo Francisco Córdova Ayuso son padres del menor HFCD, quien tiene 15 años, y cursa el tercer año de escuela superior.

15. Jorge Suárez Colón es padre del menor JCSF, quien tiene 16 años, cursa el tercer año de escuela superior y es miembro del equipo *varsity* de voleibol del Colegio San Ignacio.

16. Jimmy Sepúlveda Lavergne es padre del menor JASN, quien tiene 17 años, cursa el cuarto año de escuela superior y es el capitán del equipo *varsity* de voleibol del Colegio San Ignacio de Loyola (en adelante "CSI").

17. El menor JASN cursó hasta el noveno grado en el Colegio Maristas de Guaynabo. Sin embargo, siendo un atleta en desarrollo, y tomando en consideración el programa atlético del Colegio San Ignacio de Loyola, a ruego del menor este fue matriculado por sus padres en el CSI.

18. Desde el año 2022 hasta el presente, el menor JASN ha participado en diferentes clubes, equipos y competencias (locales y en Estados Unidos) que lo han llevado a destacarse en el deporte de voleibol. Ha sido galardonado con múltiples reconocimientos tanto a nivel local como nacional incluyendo el ALL-Star del High School Volleyball Challange.

19. El menor JASN, al igual que los demás miembros del equipo de voleibol del CSI, no solo tienen que mantener un aprovechamiento académico satisfactorio, sino que también deben entrenar varias veces al día y deben estar todo el año en continua preparación para poder participar del torneo de la Liga (PRHSAA).

20. Hoy en día, y estando en su último año de escuela superior, el menor JASN está inmerso en el proceso de ser evaluado por varias instituciones universitarias para ser acreedor de becas deportivas que le permitan continuar con su carrera académica y atlética.

21. El menor JASN ha participado de 33 juegos con el CSI.

22. Quedó establecido que la participación del menor JASN en la postemporada de voleibol de la Liga (PRHSAA), no se trata de dos partidos más o dos partidos menos, se trata de tener la mayor exposición deportiva posible vistiendo por última vez (en este torneo) el uniforme de su colegio.

23. La sanción impuesta por la Puerto Rico High School Athletic Alliance Corp (en adelante "PRHSAA") a todo el programa deportivo y al equipo de voleibol del CSI, que impide la participación del CSI en los torneos de postemporada, coarta la exposición deportiva del menor JASN en el foro deportivo más extenso, importante y prestigioso de Puerto Rico en su último año de escuela superior.

24. Jimmy Sepúlveda Lavergne y el menor JASN no fueron notificados por la PRHSAA de las sanciones impuestas al CSI, a todo el programa deportivo del CSI y a sus estudiantes.

25. La PRHSAA no tiene ningún mecanismo procesal (ni foro) al cual los estudiantes-atletas puedan acudir cuando son afectados por las determinaciones de la Liga.

26. A raíz de la sanción impuesta a todo el equipo deportivo del CSI, el menor JASN ha sido víctima de bulling en su último año de escuela superior.

27. Luis Fernández Neumann y Suzette Castellanos Martín son padres del menor EFC, quien tiene 15 años, cursa el primer año de escuela superior y es miembro del equipo junior varsity de voleibol del Colegio San Ignacio.

28. Cuando el menor EFC cursaba su séptimo grado fue matriculado por sus padres en el CSI en busca de mayores oportunidades como estudiante-atleta.

29. El menor EFC es un estudiante-atleta de dos deportes, voleibol y baloncesto.

30. Para que el menor EFC pudiera ingresar a los equipos del CSI sus padres no tuvieron que cumplimentar ningún documento. El menor solo tuvo que participar en los "tryouts" y cualificar.

31. A la fecha en que el menor EFC participó de los *tryouts* y fue admitido en los equipos juveniles de volibol y baloncesto del CSI, ni el menor ni su padre tenían conocimiento sobre los requisitos de elegibilidad impuestos por la Liga

32. En enero de 2024 el menor EFC estaba en el equipo de baloncesto juvenil del CSI.

33. Mediante llamada telefónica, el CSI le explicó al Sr. Luis Fernández Neumann padre del menor EFC que según los Bylaws de la PRHSAA su hijo era inelegible para jugar con el equipo de baloncesto juvenil del CSI. Previo a este incidente, ni el Sr. Luis Fernández Neumann ni su hijo (EFC) habían sido notificados con copia de los Bylaws de la PRHSAA.

34. Según la PRHSAA el menor EFC fue el atleta inelegible que desató las sanciones impuestas al CSI, a todo el programa deportivo del CSI y por consiguiente a sus estudiantes.

35. Hoy en día el menor EFC lleva sobre sus hombros la culpa de haber defraudado a su Colegio por las sanciones impuestas por la Liga (PRHSAA) a todos sus compañeros estudiantes-atletas.

36. El menor EFC ha sido víctima de "bullying" a raíz de las sanciones impuestas por la PRHSAA.

37. El Sr. Luis Fernández Neumann (padre del menor EFC) no hizo ninguna gestión para impugnar la sanción impuesta por la PRHSAA porque la Liga no provee ningún mecanismo para que los estudiantes-atletas o sus padres puedan recurrir de sus determinaciones.

38. El 2 de febrero el Comisionado de baloncesto notificó al CSI del jugador inelegible en el roster de baloncesto juvenil. El Sr. Roberto Rivera, director atlético del CSI, dispuso en su correo electrónico: "Confirmamos con el expediente demográfico su fecha de nacimiento en agosto previo a la fecha del primero de septiembre establecida por la constitución. También corroboramos que el estudiante participó del equipo de voleibol juvenil durante la temporada.".

39. La temporada del equipo de voleibol para el año escolar 2023-2024 comenzó en septiembre.

40. Para la temporada 2023-2024 el CSI no presentó el *roster* con los jugadores que participarían en el equipo de volibol juvenil. Aun así, el equipo de volibol juvenil del CSI participó en la temporada 2023-2024 con el aval de la Liga (PRHSAA).

41. Previo al inicio de la temporada de volibol juvenil 2023-2024 ningún componente del Comité Ejecutivo de la PRHSAA verificó o se aseguró que todos los miembros del equipo de voleibol del CSI fueran elegibles para participar de la Liga.

42. El Sr. Rivera incluyó con la comunicación del 23 de abril de 2024, entre otros documentos, el roster enmendado del equipo de baloncesto juvenil.

43. El roster para el equipo de baloncesto en la categoría juvenil que sometió el CSI que incluyó un jugador inelegible es el documento identificado cómo ID Núm. 2 de PRHSAA, en la entrada de SUMAC núm. 26.

44. El jugador inelegible cumplió 14 años previo al 1 de septiembre de 2023.

45. El 19 de abril de 2024, el Sr. Ángel Pagán, como presidente (o "Chairman") del Comité Ejecutivo (o "Executive Committee") del PRHSAA, le remitió una carta al CSI, por conducto del Sr. Roberto Rivera, en la cual le informó las conclusiones del Comité Ejecutivo.

46. El 23 de abril de 2024, el CSI por conducto de su Principal, la Sra. Maria Isabel Domenech y su entonces director atlético, el Sr. Roberto Rivera, notificaron una comunicación a la PRHSAA aceptando la determinación del comité de imponer las multas requeridas por la constitución, incluyendo la confiscación de todos

los juegos en los que jugó el atleta inelegible. El CSI solicitó una apelación de la determinación de recomendar al Consejo que el CSI fuese puesto en probatoria y solicitó una vista para apelar dicha determinación antes de que se sometiera la recomendación al Consejo.

47. Mediante comunicado fechado 30 de abril de 2024, el Comité Ejecutivo de la PRHSAA le comunicó al CSI que aceptaba la carta de 23 de abril de 2024 como una apelación y notificó su determinación sobre la apelación.

48. En dicho comunicado el Comité Ejecutivo le informó al CSI que se reiteraba en las sanciones impuestas y en su decisión de presentar una moción en la próxima reunión del Consejo para que el CSI fuese puesto en probatoria.

49. El Comité Ejecutivo advirtió al CSI que dicha determinación era final conforme al By-Law 15 de la Constitución de la PRHSAA.

50. El 1 de mayo de 2024 PRHSAA celebró su última reunión ordinaria del Consejo General del año escolar 2023-2024 en la Escuela Tasis de Dorado.

51. En esa reunión, el Comité Ejecutivo de la PRHSAA presentó una moción recomendando las siguientes medidas disciplinarias: (a) Una multa de Mil Cien dólares ($1,100.00) por el uso de un atleta no elegible durante la Temporada Regular y el Torneo de Campeonato de Postemporada de Voleibol Juvenil Masculino 2023 (11 juegos a $100.00 por juego); (b) Una multa de Cien dólares ($100.00) por el uso de un atleta no elegible durante la Temporada Regular de Baloncesto Juvenil Masculino 2024 (1 juego a $100.00); (c) La devolución a la PRHSAA de la placa de Subcampeón del Torneo de Campeonato de Postemporada de Voleibol Juvenil Masculino 2023; (d) Que todo el programa atlético del Colegio San Ignacio sea puesto en probatoria durante todo el año escolar 2024-2025.

52. El CSI estuvo presente en la reunión del Consejo General y expuso su posición en defensa de sus estudiantes.

53. Ese mismo día la PRHSAA, por conducto del Sr. Ángel Pagán le comunicó por escrito al CSI, por conducto de su entonces Director Atlético, la decisión del Consejo.

54. El Consejo votó a favor de la moción por voto mayoritario.

55. El 3 de mayo de 2024, el CSI le comunicó a la comunidad ignaciana la sanción que el CSI recibió de la Liga. Asimismo, notificó que, el 1 de mayo de 2024, la PRHSAA determinó que el Colegio San Ignacio entraría en un periodo de probatoria para el curso escolar 2024-25.

56. Mediante comunicado fechado el 8 de mayo de 2024, el CSI solicitó una reunión extraordinaria del Consejo General de la PRHSAA según provee el By-Law 1 de la Constitución para solicitar una reconsideración al Consejo. Dicha comunicación estaba firmada por un solo representante de cinco (5) escuelas miembros.

57. El By-Law 1 establece que las reuniones extraordinarias pueden ser llamadas en cualquier momento por el presidente o por orden de dos representantes autorizados de cinco miembros de la PRHSAA con derecho a voto.

58. Los By-Laws no establecen un término para la celebración de asambleas extraordinarias.

59. El 8 de mayo de 2024, la PRHSAA le comunicó al CSI que, para atender la petición, la solicitud debía estar firmada por ambos representantes de cinco (5) escuelas miembros.

60. El 10 de mayo de 2024, el CSI, presentó la carta de solicitud de asamblea extraordinaria con la firma de ambos representantes de cinco (5) escuelas adicionales.

61. El 17 de mayo de 2024 el CSI pagó las multas impuestas por el Consejo.

62. El 23 de mayo de 2024, el CSI remitió carta a la PRHSAA dando seguimiento a su solicitud de reunión extraordinaria.

63. El 30 de julio de 2024, la PRHSAA emitió un comunicado a todos sus miembros informando que el CSI envió una carta solicitando una Asamblea Extraordinaria conforme al By-Law 1 del Reglamento y citando al Consejo a una reunión extraordinaria para el 17 de agosto de 2024 a las 8:00 a.m. en Wesleyan Academy.

64. El 16 de agosto de 2024, el CSI por conducto de su Principal la Sra. María Isabel Domenech, envió un comunicado a los miembros de la PRHSAA.

65. El 17 de agosto de 2024, se celebró la Asamblea Extraordinaria y se llevó a votación la petición del CSI para reconsideración de la sanción de probatoria.

66. El CSI estuvo presente y representado por la Sra. María I. Domenech y su nuevo director Atlético, el Sr. Carlos Acosta. También estuvo presente el Presidente del CSI, Sr. Timothy Howe.

67. Durante la Asamblea Extraordinaria se ratificó la sanción de probatoria por voto mayoritario.

68. El 20 de agosto de 2024, el CSI notificó a sus estudiantes la decisión del Consejo y su determinación de acatar la probatoria impuesta por la PRHSAA.

69. Para la temporada 2023-2024 el Sr. Miguel Rossi fue el Comisionado designado por el Comité Ejecutivo de la PRHSAA con la responsabilidad de validar la elegibilidad de los equipos de Volibol Juvenil.

70. En la temporada 2023-2024 el Comisionado Miguel Rossi no descargó su responsabilidad conforme con los Bylaws de PRHSAA al permitir la inclusión de un jugador inelegible dentro del equipo de Volibol Juvenil del CSI.

71. La negligencia del Comisionado Miguel Rossi fue sancionada con una amonestación verbal la cual no fue comunicada ni al CSI ni al Consejo de la PRHSAA.

72. En la reunión celebrada 1 de mayo de 2024 el Consejo evaluó y deliberó sobre la recomendación del Comité Ejecutivo de la PRHSAA para colocar al CSI, su Programa Deportivo y sus estudiantes en probatoria. Como parte del proceso deliberativo del Consejo, la Sra. Ana Recurt del CPN "asks who reviews the rosters that are submitted, and John Roman explains that it is the responsability of each school to verify that the document is correct" (inciso G "Executive and Evaluation Committee Report, minuta estipulada - Reunión de la PRHSAA del 1 de mayo de 2024).

73. La explicación ofrecida por el Sr. John Román - Presidente de la PRHSAA, según surge de la minuta estipulada del 1 de mayo de 2024, a los miembros del Consejo mientras deliberaban sobre la recomendación del Comité Ejecutivo para colocar al CSI, a su Programa Deportivo y a sus estudiantes en probatoria no fue correcta. Es un hecho que la responsabilidad de verificar la elegibilidad de los estudiantes-atletas incluidos en los roasters de la Liga es una responsabilidad compartida entre las escuelas miembros y la PRHSAA; así surge del Bylaw 9 de la PRHSAA

("Member schools must forward an eligibility roaster of all participants in each team to the Alliance office and to the commissioner of the sport. The Executive Committee will have the responsibility to verify that all students are eligible to play…")."

74. Los Bylaws de la PRHSAA están mal codificados y son incongruentes entre sí, a saber: existen dos By-Laws 29, el By-Law 32 sección 2 (i) está incompleto, el By-Law 32 Sección 5 recoge "Violation of player eligibility regulations as outlined in By-Law 10A-O aunque en el By-Law 10 nada se dispone de elegibilidad ya que dicho By-Law lo que pretende regular es el "Recruitment". Por su parte la Sección 7 del By-Law 32 hace referencia a una disposición del By-Law 33 E que no existe o no es de aplicación al propósito de la Sección 7 del By-Law 32.

Así establecido, resolvió que la sanción impuesta no solo produjo un daño irreparable a los menores, sino que implicó una actuación contraria a las relaciones contractuales entre las partes y los derechos garantizados en La Carta de Derechos del Estudiante. Concluyó, además, que las acciones de PRHSAA denotan un manejo arbitrario, caprichoso e irrazonable de sus reglas, por lo que, procede dejar sin efecto de manera inmediata la sanción drástica impuesta a los estudiantes-atletas. Consecutivamente decretó que "los estudiantes-atletas podrán competir para recibir los premios y reconocimientos que correspondan a sus talentos y esfuerzos deportivos".[16]

Inconforme con la sentencia dictaminada, el 24 de octubre de 2024, PRHSAA recurrió ante este Tribunal de Apelaciones mediante la presentación de una *Apelación* y un escrito intitulado *Auxilio de Jurisdicción*. En su recurso, esbozó los siguientes los señalamientos de error:

**Primer Error:** Erró el TPI al celebrar el Juicio sobre la acción de injunction permanente y sentencia declaratoria, sin haberle permitido a la PRHSAA efectuar descubrimiento de prueba, violentando así su debido proceso de ley.

**Segundo Error:** Erró el TPI al denegar la Moción de Desestimación presentada por la PRHSAA y al conceder el injunction bajo la Ley 195-2012, que es completamente inaplicable a los hechos del presente caso, toda vez que ésta únicamente aplica a instituciones educativas ante sus alumnos y la PRHSAA no es una institución educativa ni, mucho menos, la institución educativa de la Parte Demandante.

**Tercer Error:** Erró el TPI al no desestimar la acción de la Parte Demandante por falta de legitimación activa para litigar el caso, toda vez que no son miembros de la PRHSAA ni parte de la relación contractual entre ésta y sus miembros, pues únicamente las escuelas tienen contrato con la Asociación. Además, la Parte Demandante no tiene legitimación para abogar por los derechos del resto de los equipos de los cuales no son parte.

---

[16] Apéndice de la parte apelante, pág. 492.

**Cuarto Error:** Erró el TPI al conceder el injunction bajo la Regla 57 de Procedimiento Civil, a pesar de que no se probaron los elementos para su concesión.

**Quinto Error:** Erró el TPI al no desestimar por insuficiencia de prueba la acción de los menores JCSF y HFCD y los padres que los representan, toda vez que no se presentó ni un ápice de prueba en cuanto a éstos ni testificaron en el Juicio.

**Sexto Error**: Erró el TPI al conceder, *sub silentio*, la sentencia declaratoria, sin que se presentara prueba alguna sobre dicha causa de acción, tratándose de meras alegaciones de la Parte Demandante desprovistas de prueba.

**Séptimo Error:** Erró el TPI al no acumular a las escuelas miembro de la PRHSAA como partes indispensables, tomando la Sentencia recurrida en una nula e ineficaz.

El 28 de octubre de 2024, esta Curia emitió *Resolución* en la declaró *No Ha Lugar* el auxilio solicitado. Consecuentemente, ordenamos a la parte apelada a presentar su *Alegato en Oposición* respecto al escrito de Apelación. En cumplimiento con lo ordenado, el 4 de noviembre de 2024, la parte apelada sometió su *Alegato en Oposición* y *Solicitud de Permiso Para Exceder Números de Páginas*.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el derecho aplicable a la controversia ante nuestra consideración.

**II.**

**A.      El recurso extraordinario de injunction permanente**

En nuestro esquema procesal, "el *injunction* es un mandamiento judicial en virtud del cual se requiere que una persona se abstenga de hacer, o de permitir que se haga, determinada cosa que infrinja o perjudique el derecho de otra". *Next Step Medical v. Bromedicon*, 190 DPR 474, 486 (2014). Véase, además, Artículo 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 3421. Este constituye un remedio extraordinario, procedente del sistema anglosajón, conocido también como el sistema de equidad, e incorporado a nuestro ordenamiento jurídico por vía de legislación. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed., San Juan, Ed. LexisNexis, 2017, Sec. 5702, pág. 588. Actualmente tanto el Código de Enjuiciamiento Civil, como la Regla 57 de Procedimiento Civil, rigen los aspectos sustantivos y procesales del

*injunction. Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 318-319 (2008).

En lo pertinente, el *injunction* "se caracteriza por su perentoriedad dirigida a evitar la producción de un daño inminente o a restablecer el régimen de ley quebrantado por una conducta opresiva, ilegal o violenta". *Díaz Vázquez v. Colón Peña*, 2024 TSPR 113; *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 366 (2001). Existen tres modalidades de este remedio, a saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente". *Next Step Medical v. Bromedicon*, supra, pág. 486. En la atención del caso presente nos limitaremos a abordar estas dos últimas categorías.

Así pues, el propósito fundamental del *injunction* preliminar o *pendente lite* es (1) mantener el *status quo* hasta que se celebre el juicio, (2) impedir que la situación se torne académica o (3) evitar que se ocasionen daños mayores mientras perdura el litigio. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 41 (2010); *Rullán v. Fas Alzamora,* 166 DPR 742, 764 (2006). Particularmente, la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R 57.3, establece los criterios que corresponde analizar previo a la expedición de un *injunction* preliminar: (a) la naturaleza del daño a que está expuesta la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. Ahora bien, su concesión descansa en la sana discreción judicial, que se ejerce al ponderar las necesidades y los intereses de las partes involucradas. *Mun. de Ponce v. Gobernador*, 136 DPR 776, 790-791 (2001).

En cambio, el *injunction* permanente o clásico requiere celebrar una vista, y a su vez, considerar la mayor parte de los criterios mencionados. *Mun. de Loíza v. Sucns. Suárez et al.*, *supra*, pág. 367. Esencialmente "[p]rocede conceder una petición de *injunction* permanente si la parte que lo

solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño". *Senado de Puerto Rico v. Gobierno de Puerto Rico*, 203 DPR 62 (2019). En ese sentido, constituye un daño irreparable aquel que: (1) no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles, (2) no puede ser apreciado con certeza, (3) ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley. *Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 681 (1997).

Recientemente el Tribunal Supremo de Puerto Rico en *Carmona Sánchez v. Baloncesto Superior Nacional*, 2024 TSPR 65, atendió una controversia que giraba en torno a una enmienda al cuerpo normativo de la Liga Juvenil de la Federación de Baloncesto de Puerto Rico. En este caso emitió el siguiente razonamiento legal:

> Como norma general, los tribunales no intervendremos en estos asuntos. Sin embargo, hemos reconocido nuestra capacidad de intervenir cuando no se satisfagan los requisitos mínimos exigibles en virtud de la relación contractual, cuando las determinaciones de una asociación sean **arbitrarias, caprichosas o irrazonables**, así como, cuando la parte esté expuesta a un daño irreparable y a la ausencia de un remedio eficaz, completo y adecuado. *Íd.*

A la luz de lo anterior, el máximo foro determinó que los jóvenes de la Liga —menores de edad representados por sus progenitores— no están impedidos por la *Cláusula de Selección de Foro* ni por el principio de autonomía deportiva para recurrir a los foros judiciales mediante el recurso de *injunction* luego de demostrar la razón para preterir el procedimiento interno de la organización. Puntualizó, además, que "la concesión del remedio extraordinario de injunction debe cumplir con los términos de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, y descansa en la sana discreción del tribunal luego de haber evaluado las circunstancias particulares del caso". *Íd.*

Corresponde destacar que, el remedio del *injunction* también puede ser utilizado en aquellos casos derivados del incumplimiento de una relación contractual. En tales escenarios "es necesario que exista un contrato válido del cual se deriva la obligación para que proceda *injunction*", sin embargo, no puede concederse en la atención de aquellos contratos que no pueda

exigirse su cumplimiento específico. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* supra, pág. 594.

En la atención a este remedio, la Regla 57.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.7, dispone que toda orden de *injunction* preliminar o permanente deberá expresar las razones para su expedición. A su vez, será redactada en términos específicos y describirá con detalle razonable, no mediante referencia a la demanda u otro documento, el acto o actos cuya realización se prohíbe. 32 LPRA Ap. V, R. 57.7. Emitida tal determinación, obligará a las partes en la acción, entiéndase sus oficiales, agentes, empleados y abogados y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. 32 LPRA Ap. V, R. 57.7.

Una vez expedido el *injunction*, el Tribunal de Primera Instancia ostenta jurisdicción para tomar decisiones sobre este remedio incluso en aquellos casos en los que una de las partes recurre al foro apelativo. Sobre este particular, la Regla 57.7(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 57.7(a), delimita las siguientes facultades:

> Cuando una parte apele o recurra de una orden o sentencia que conceda, deje sin efecto o deniegue un injunction, el tribunal de instancia, en el ejercicio de su discreción, podrá suspender, modificar, restituir o conceder un injunction mientras se dilucida el recurso interpuesto bajo aquellos términos relativos a fianza y demás que estime adecuados para proteger los derechos de la parte contraria.

Una parte inconforme con la determinación relativa a la expedición de un *injunction* tiene el derecho a recurrir al tribunal revisor. Presentado el recurso apelativo, el Tribunal de Apelaciones ostenta las siguientes facultades, según la Regla 57.7(b):

> Lo dispuesto en esta regla no restringe la facultad del tribunal de apelación o de uno(a) de sus jueces o juezas para paralizar los procedimientos mientras se dilucida el recurso interpuesto o para suspender, modificar, restituir o conceder un injunction mientras esté pendiente la apelación o certiorari, o para dictar cualquier orden adecuada para preservar el *status quo* o la efectividad de la sentencia que habrá de emitirse en su día.

En lo concerniente a la revisión judicial, la normativa aplicable establece que cuando el interdicto se basa en prueba documental y declaraciones juradas, el tribunal apelativo se encuentra en iguales

condiciones que el Tribunal de Primera Instancia para evaluar las determinaciones de hechos. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, *supra*, pág. 1681. Por su parte, la Regla 42.2 de Procedimiento Civil, 2 LPRA Ap. V, R. 42.2, reconoce que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

**B.    Legitimación activa**

En nuestro ordenamiento jurídico, "[l]a doctrina de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente su jurisdicción". *Rivera Segarra v. Rivera Lassén*, 2024 TSPR 60; *Hernández Montañez v. Parés Alicea,* 208 DPR 727, 738 (2022). En ese sentido, una controversia es justiciable cuando existan partes con intereses encontrados cuyo propósito sea obtener un remedio que tenga un efecto sobre la relación jurídica. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011); *E.L.A. v. Aguayo*, 80 DPR 552, 584 (1958). No obstante, una controversia no es justiciable de mediar alguno de los siguientes escenarios: (1) se procura resolver una cuestión política; (2) **una de las partes carece de legitimación activa**; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017).

Así pues, el principio de justiciabilidad impone el deber de evaluar si la parte reclamante posee legitimación activa. *Hernández Montañez v. Parés Alicea*, supra, págs. 738-739*; Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). La legitimación activa significa "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta

forma, obtener una sentencia vinculante". *Ramos, Méndez v. García García*, supra, pág. 394; *Bhatia Gautier v. Gobernador,* supra, pág. 69.

Sobre este particular, el Tribunal Supremo de Puerto Rico ha discutido reiteradamente los siguientes criterios respecto a legitimación activa:

> Al amparo de esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. *Hernández Montañez v. Parés Alicea*, supra, pág. 739; *Bhatia Gautier v. Gobernador*, supra, pág. 69.

A esos fines, esta doctrina requiere que el promovente demuestre al tribunal que su interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Ramos, Méndez v. García García*, supra, pág. 394; *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002). Nótese que esta exigencia difiere de otros elementos de justiciabilidad, pues gira primordialmente en torno a la parte que prosigue la acción y secundariamente en cuanto a las cuestiones a adjudicarse. *Hernández Montañez v. Parés Alicea*, supra, pág. 739*; Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 564 (1989). Ante una alegación de falta de legitimación activa, corresponde adoptar el siguiente análisis jurisprudencial:

> Cuando se cuestiona la legitimación de una parte para entablar un pleito, el juzgador debe tomar como ciertas las alegaciones del reclamante e interpretarlas desde el punto de vista más favorable a éste. Nuestra jurisprudencia ha interpretado de forma flexible y liberal los requisitos de legitimación activa durante las últimas décadas, ya que de lo contrario se les cerrarían las puertas de los tribunales a aquellas personas y entidades que han sido adversamente afectadas por actuaciones del Estado o de personas particulares y que presentan reclamaciones que pueden ser atendidas debidamente por el Poder Judicial. *Crespo v. Cintrón,* 159 DPR 290, 299 (2003); *Col. Ópticos de P.R. v. Vani Visual Center*, supra, pág. 567.

En lo pertinente a la controversia, los progenitores con patria potestad gozan de "las más amplias facultades para actuar en nombre de sus hijos menores no emancipados tanto en la esfera judicial como en la extrajudicial". *Ríos Rosario v. Vidal Ramos*, 134 DPR 3, 8 (1993). El Artículo 590(e) del Código Civil (2020) de la Ley Núm. 55-2020, 31 LPRA sec. 7242(e), según enmendada, establece que tienen sobre su hijo sujeto a su patria potestad

el deber de representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandada. El poder de representación de los progenitores que ostentan patria potestad comprende todas las facultades concernientes a los bienes, los deberes y los derechos, salvo aquellos que se encuentran expresamente exceptuado por ley. *Ríos Rosario v. Vidal Ramos*, *supra*, pág. 8. Lo anterior, sin embargo, requiere que la parte promovente demuestre que tiene legitimación activa. Es decir, le corresponde demostrar que con toda probabilidad ostenta una causa de acción vigorosamente y traerá a la atención del tribunal los asuntos en controversia. *Crespo v. Cintrón*, supra, pág. 299; *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

**C.    Parte indispensable**

Nuestro ordenamiento procesal civil exige la acumulación de partes indispensables en un pleito. Al respecto la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que deberá incorporarse como partes en un pleito "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia". Los principios que subyacen dicho precepto son la protección constitucional que impide privar a las personas de su libertad o propiedad sin un debido proceso de ley, y la necesidad de que se dicten decretos judiciales completos. *Pérez Ríos y otros v. Luma Energy, LLC*, 2023 TSPR 136; *Colón Negrón v. Mun. Bayamón,* 192 DPR 499, 510 (2015). El interés de una parte indispensable ha de ser tal que "no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia". *Íd.*; *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014). Dicho interés debe ser de tal naturaleza que lo convierta en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. Lexisnexis, 2017, pág.166. Deberá ser un interés real e inmediato, no

especulativo ni futuro. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).

No existe ninguna fórmula rígida que permita al tribunal precisar si una parte es indispensable o no lo es. *Romero v. S.L.G. Reyes*, 164 DPR 721, 732 (2005). La determinación de si debe acumularse una parte depende de las circunstancias particulares y los hechos específicos de cada caso. *Íd.; Pérez Rosa v. Morales Rosado*, supra. Corresponderá hacer un "análisis juicioso que incluya la determinación de los derechos del ausente y las consecuencias de no unirlo como parte en el procedimiento". *Colón Negrón v. Mun. Bayamón*, supra, pág. 512; *Romero v. S.L.G. Reyes*, supra, pág. 733.

La omisión de incluir a una parte indispensable incide sobre el debido proceso de ley que cobija al ausente. *Inmobiliaria Baleares, LLC y otros v. Bernabé González y otros*, 2024 TSPR 112; *Colón Negrón v. Mun. Bayamón*, supra, pág. 511. Ausente una parte indispensable el tribunal carecerá de jurisdicción para adjudicar la controversia. *Íd.* A su vez, la sentencia que se emita en ausencia de parte indispensable es nula. *García Colón et al. v. Sucn. González,* 178 DPR, págs. 527, 550 (2010). Es de tal arraigo el interés de proteger a dicha parte que la no inclusión de ésta en un pleito "constituye una defensa irrenunciable" que puede traerse en cualquier etapa del proceso, incluyendo la apelativa. *Bonilla Ramos v. Dávila Medina*, 185 DPR 667 (2012); *Pérez Rosa v. Morales Rosado*, supra.

**D.     Desestimación al amparo de la Regla 10.2 de Procedimiento Civil**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que antes de presentar una alegación responsiva, la parte demandada puede instar una moción en la que solicite la desestimación de la demanda instada en su contra. *Aut. de Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). En lo pertinente, la referida regla dispone que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) **Dejar de exponer una**

**reclamación que justifique la concesión de un remedio;** (6) Dejar de acumular una parte indispensable. 32 LPRA Ap. V., R.10.2. 32 LPRA Ap. V.

Conforme dispone el inciso (5) de la precitada regla se podrá solicitar la desestimación de una demanda por el fundamento de que ésta no esboza una reclamación que justifique la concesión de un remedio. Regla 10.2 (5) de Procedimiento Civil, *supra.* Es decir, lo que se impugna es la suficiencia jurídica de las alegaciones para obtener algún remedio legal, no la veracidad de lo alegado, ni la capacidad del demandante para probarlo.

Al adjudicar una moción a base de este fundamento los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorables a la parte demandante. *Costas Elena y otros v. Magic Sport Culinary Corp.* y otros, 2024 TSPR 13; *López García v. López García*, 200 DPR 50, 69 (2018). En particular, el tribunal debe tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Accurate Sols v. Heritage Environmental*, 193 DPR 423, 433 (2015). Ello es así ya que, según indicamos anteriormente, lo que se ataca con esta moción es un vicio intrínseco de la demanda, no los hechos aseverados. *Íd.*

Entonces, para que proceda una moción de desestimación, la parte demandada tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pueda probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. (Citas omitidas). *Rivera Candela y otra v. Universal Insurance Company*, 2024 TSPR 99; *López García v. López García,* supra. No obstante, no procede la desestimación si la demanda es susceptible de ser enmendada. *Díaz Vázquez y otros v. Colón Peña,* supra; *Accurate Sols. v. Heritage Environmental*, supra*; Aut. de Tierras v. Moreno & Ruiz Dev. Corp.*, supra. Solo en casos extremos, se debe privar a un demandante de su día en corte. *Íd.*

**E.    Desestimación por insuficiencia prueba a tenor con la Regla 39.2(c) de Procedimiento Civil**

La Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c), permite que la parte demandada solicite la desestimación luego de que la parte demandante presente la prueba:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

Al amparo de esta regla, el demandado, sin renunciar al derecho de ofrecer prueba, solicita la desestimación fundamentándose en que bajo los hechos hasta ese momento probados, el demandante no tiene derecho a la concesión de remedio alguno. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 917 (2011). Ahora bien, es menester que no exista duda en cuanto a que la parte demandante no tiene derecho a la concesión de remedio alguno para que proceda la desestimación de una causa de acción bajo la citada Regla 39.2(c) de Procedimiento Civil. *Lebrón v. Díaz*, 166 DPR 89, 94 (2005). En tales casos, la desestimación se da contra la prueba, por lo que, la decisión del tribunal dependerá de su apreciación de la evidencia presentada. *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 916.

De acoger la solicitud desestimatoria, el tribunal puede determinar los hechos y dictar sentencia contra el demandante o puede denegarla hasta la presentación de toda la prueba. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 822 (2013) (citando a J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, San Juan, Pubs. J.T.S., 2011, T. III, pág. 1158). No obstante, "dada la gravedad de una desestimación de la causa de acción, los tribunales deben ser cuidadosos al atender una moción al amparo de la Regla 39.2(c) pues conlleva el final de la reclamación de un demandante y

de su día en corte". *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág., 916.

**F.      La Carta de Derechos del Estudiante**

La educación ocupa un sitial prominente en nuestro país. *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 270 (2010). El Artículo II de la Sección 5 de la Constitución de Puerto Rico, Const. PR, LPRA, Tomo 1, dispone que toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos y de las libertades fundamentales.  El fin de este precepto constitucional "es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente sujeto a que el Estado tenga los recursos necesarios para su implantación". *Orraca López v. ELA,* 192 DPR 31, 40 (2014); *Declet Ríos v. Dpto. de Educación*, 177 DPR 765, 773 (2009). Esta garantía constitucional tiene un interés apremiante en que la educación tanto pública como privada sea de excelencia. *AMPR v. Srio. Educación*, supra, pág. 271.

En armonía con tal principio, La Carta de Derechos del Estudiante de la Ley Núm. 195-2012, 18 LPRA 3801, según enmendada, promulga como política pública el derecho a la educación. Esta pieza legislativa establece que "el conocimiento y la buena educación son herramientas que ofrecen excelentes oportunidades para el progreso del ser humano, tanto a nivel individual, como a nivel colectivo, inclusive como pueblo". Exposición de Motivos, Ley Núm. 195-2012, *supra*, 18 LPRA 3801. De manera específica, el Artículo 2 de la precitada ley reconoce que su aplicabilidad se extiende de forma equitativa tanto a estudiantes provenientes del sistema público de enseñanza como aquellos del sistema privado. No obstante, el referido artículo establece que aquellas disposiciones legales que sean de pertinencia exclusiva al sistema público no serán extensivas al sector de educación privada. 18 LPRA 3801.

Por su parte, el Artículo 4 de la Ley Núm. 195-2012, *supra*, prescribe que "[a] todos los estudiantes los estudiantes se les garantizará la igual

protección de las leyes y los derechos que les otorga la Constitución de Estados Unidos, las leyes federales, la Constitución del Estado Libre Asociado de Puerto Rico y las demás leyes, reglamentos y ordenanzas que le sean aplicables". En virtud de lo anterior, el inciso dieciséis (16) del referido artículo garantiza que cada estudiante en cualquier proceso disciplinario tenga derecho a un debido proceso de ley. 18 LPRA sec. 3802(16). En lo pertinente, la Ley Núm. 195-2012, *supra*, concede los siguientes derechos:

> (a) Que se le notifique la falta y la sanción a imponerse. Esta, se notificará a los padres, tutores o encargados del estudiante, y en los casos de estudiantes mayores de edad, se les notificará directamente a los mismos.
>
> (b) Que se le dé la oportunidad de poder ser escuchado y oído antes de ser sancionado.
>
> (c) Ser juzgado ante una persona imparcial y competente.
>
> (d) Tener conocimiento del reglamento estudiantil, el cual será un documento público y accesible para todos los estudiantes. 18 LPRA sec. 3802(16)(a)(b)(c)(d).

Estas garantías legales permiten que cada estudiante sea contemplado como un aprendiz activo y capaz de interactuar en su entorno social, y a su vez, salvaguardan su derecho a ser escuchado. Artículo 4(18)(19), Ley Núm. 195-2012, *supra*, 18 LPRA sec. 3802(18)(19).

**G.   El cuerpo normativo adoptado por Puerto Rico High School Athletic Alliance**

La Constitución de Puerto Rico reconoce el derecho de las personas a asociarse libremente para fines lícitos, salvo en organizaciones militares o cuasi militares. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1. En virtud de este derecho, el Artículo 1.02(3) de la Ley General de Corporaciones, Ley Núm. 164-2009, 14 LPRA sec. 3502, según enmendada, permite la creación de una corporación sin fines de lucro mediante la presentación de un certificado de incorporación ante el Departamento de Estado de Puerto Rico. Una vez incorporada, tendrá personalidad jurídica independiente a las de sus constituyentes. Artículo 217 del Código Civil, Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5862.

Además, se regirá "por sus cláusulas de incorporación y el reglamento complementario o por cualquier documento constitutivo, según su particular naturaleza y destino, siempre que no sean contrarios a la ley ni contravengan el orden público". Artículo 219 del Código Civil, *supra*, 31 LPRA 5864. Igualmente, tendrá autoridad legal para: (1) demandar y ser demandada bajo su nombre para participar en cualquier procedimiento legal, (2) adoptar, enmendar y derogar estatutos corporativos, y (3) otorgar contratos e incurrir en responsabilidades, entre otros, según prescriben los incisos (b), (f) y (l) del Artículo 2.02 de la Ley General de Corporaciones, *supra*, 14 LPRA sec. 3522.

Cónsono con lo anterior, las corporaciones sin fines de lucros ostentan la facultad para adoptar como parte de su cuerpo normativo los By-Law. El Tribunal Supremo de Puerto Rico explica que tales estatutos instauran los criterios relativos a las condiciones para ser miembros de una organización sin fines de lucro:

> Las distintas Leyes Generales de Corporaciones que han regido en Puerto Rico han requerido que determinados asuntos se consignen expresamente en el Certificado de Incorporación a radicarse que ha de presentarse ante el Departamento de Estado. Como norma general, las condiciones o los requisitos que reunir los miembros de las Corporaciones Sin Fines de Lucro son asuntos que deben consignarse en el Certificado de Incorporación. Por excepción, los incorporadores pueden estipular en el **Certificado de Incorporación que las condiciones o requisitos para ser miembro de esa Corporación Sin Fines de Lucro se establecerán en los estatutos (By-laws) de la corporación**. *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, 203 DPR 31, 46 (2019).

A su vez, esta organización reglamentada facilita que el organismo sin fines de lucro cumpla su finalidad, la cual implica utilizar "los beneficios o las ganancias de su gestión para promover la misión y los fines sociales de la entidad, mas no para beneficiar económicamente a sus miembros ni a terceros". *Íd.*, pág. 45. Véase, también, C. Díaz Olivo, *Sin fines de lucro: normativa jurídica del Tercer Sector*, Colombia, Ed. AlmaForte, 2016, págs. 14-16.

A tenor con la normativa esbozada, PRHSAA adoptó la *Constitution and By-Laws* a los fines establecer una corporación sin fines de lucro destinada a la organización de actividades deportivas entre escuelas

privadas. El Artículo II de su constitución detalla el propósito y la filosofía de la Liga:

> The primary purpose of the Alliance is to provide a structured and well organized context for athletic competition among member schools, facilitating each school's effort to fulfill its educational objectives. The Alliance seeks to initiate, promote and maintain a spirit of athletics and good sportsmanship among member schools.
>
> The Alliance and its member schools recognize that interscholastic athletic activities are an integral part of the total secondary school (7-12) educational program. The interscholastic athletic program has as its purpose to provide educational experiences not otherwise provided in the curriculum, which will develop learning outcomes in the areas of knowledge, skills and emotional patterns and will contribute to the integral development of the student-athlete.
>
> All member schools shall be dedicated to the purposes of the Alliance and will promote clean, fair and well-organized athletic contests. They will help to promote sportsmanship among and between teams and in general maintain adequate control of players, spectators and all other persons or groups concerned. All coaching staff should be properly attired, identified by a polo or T-shirt with the name of the school he/she is representing during all official athletic contests.
>
> The interschool activities sponsored by the Alliance and/or its member schools shall be primarily for the benefit of the students who participate in them and not for the benefit of the sponsoring institutions.[17]

En aras de cumplir su finalidad, el Artículo IV de este cuerpo organizacional reconoce que la liga deportiva gozará de la facultad para adoptar los By-Laws, y cualquier otra regulación que sea necesaria, y tendrán misma fuerza y efecto que la Constitución de la PRSHAA. [18] Cónsono con lo anterior, el By-Law 6 reconoce la voluntariedad de la membresía, y a la vez, establece que está sujeta al cumplimiento de una serie de requisitos:

> Membership shall be on a voluntary basis and it will be restricted to those schools who meet the requirements outlined herein. The privileges conferred by each form of membership are described in By-Law 8.[19]

Particularmente el inciso (e) del By-Law 6 impone el siguiente deber de sobre la escuela participante:

> 1. The school must submit a formal application for membership in the Puerto Rico High School Athletic Alliance, Inc. The application must be presented in writing thirty (30) days prior to the May Council meeting, must be signed by the administrative head of the school, and must contain the following information:
>
> .     .     .     .     .     .     .     .

---

[17] Apéndice de la parte apelante, pág. 50.
[18] Apéndice de la parte apelante, pág. 51.
[19] Apéndice de la parte apelante, pág. 54.

e) A statement of how the school intends to fulfill the membership requirements as stated in By-Law 6 A, including a list of the sports in which the school intends to participate.[20]

De cumplir con tal mandato, los colegios miembros gozarán de los siguientes privilegios, según establece el By-Law 8:

A. All members have the privilege of competing with other members of the Alliance.

B. All members have the privilege of competing for individual and team awards when a member school is sponsoring contests for which the member school is furnishing awards.

C. All members may engage in competition with schools outside the Alliance.[21]

En lo pertinente a la controversia, el By-Law 9 aborda las reglas vinculadas con aquellas competencias organizadas bajo la PRHSAA. Particularmente, el inciso (b) de la aludida regla exige que las instituciones educativas y la Liga revisen los criterios de elegibilidad de sus estudiantes-atletas:

B. Member schools must forward an eligibility roster of all participants in each team to the Alliance office and to the commissioner of the sport. Rosters must include legal name, grade in school, date of birth, number of semesters the student has completed in grades ten (10th), eleven (11th), and twelve (12th) (a semester is defined as one-half of a school year), age, date of first attendance, and signatures of the coach, athletic director, and an administrator. (See By-Law 11 L for special condition.)

**The Executive Committee will have the responsibility to verify that all students are eligible to play**. This roster information is to be supplied on copies of the official Alliance Roster Form provided by the Alliance. Rosters are to be received by, the commissioner of the sport, and the Alliance office seven (7) days before the first scheduled contest. Additions to the rosters, including changes of level, shall be received by the commissioner and the Alliance office prior to competition.
All signed eligibility rosters should be hand delivered, sent by certified mail, or sent by fax to the Alliance office. Failure to submit eligibility rosters to the Alliance office at least seven (7) days prior to the first scheduled contest in that category shall result in a fine of $100 for each roster not submitted and forfeiture of any contests scheduled to be played prior to the receipt of said roster. The same fine and forfeiture will also apply to additions to the rosters that are not submitted in accordance to the procedures outlined above for such addition.[22]

De manera específica, la Sección 1 del By-Law 29 intitulado *Regulation for Youth Sports* fija los elementos de elegibilidad aplicables a los siguientes estudiante-atletas:

---

[20] Apéndice de la parte apelante, págs. 54-55.
[21] Apéndice de la parte apelante, págs. 55.
[22] Apéndice de la parte apelante, pág. 56.

Section 1. For the purpose of this By-Law, Youth is defined to mean 7th and 8th grade. No student may participate in Youth sports who are in the 9th grade or who has reached his 14th birthday prior to the first of September.[23]

Lo anterior implica que aquellos estudiantes que estén en noveno grado o que hayan cumplido catorce (14) años antes del primero de septiembre no podrán participar de deportes bajo la categoría juvenil. De incumplir con esta normativa, la Sección 1 del By-Law 32 dispone lo siguiente:

Section 1. Willful disregard of the rules set down in the Constitution and the By-Laws of the Alliance and willful disregard of the rules set down by the National Federation of State High School Athletic Associations and other rules recognized for Alliance competition will result in sanctions against individuals, teams and/or schools. These sanctions will be determined by the Alliance Council; under the direction of the president unless otherwise specified.[24]

En consonancia con tales disposiciones, la Sección 2(i) del By-Law 32 regula el proceso de imposición de sanción:

Section 2. Certain automatic sanctions and penalties for infractions of the By-Laws of the Alliance are set out elsewhere in these By-Laws. They include:

.        .        .        .        .        .        .        .

i. A one year suspension from Alliance participation of the coach or member of the athletic department when the Council, upon recommendation of the president and the Executive and [25]

Nótese que, en efecto, el estatuto citado reconoce que ante un incumplimiento con las normas de elegibilidad procede la imposición de sanción. Sin embargo, la regla enunciada no contiene los elementos lingüísticos suficientes para identificar cuál es el procedimiento atinente a la imposición de una sanción en tales escenarios.

Cónsono con lo anterior, la Sección 5(b) del By-Law 32 cataloga como infracción seria la siguiente conducta: "Violation of player eligibility regulations as outlined in By-Law 10A-0". [26] Obsérvese que esa regla también reconoce que en casos de incumplimiento de las normas de elegibilidad corresponde imponer sanción. Sin embargo, aunque hace referencia al By-Law 10A-0, no consta en el expediente apelativo

---

[23] Apéndice de la parte apelante, pág. 79.
[24] Apéndice de la parte apelante, pág. 80.
[25] Apéndice de la parte apelante, pág. 81.
[26] Apéndice de la parte apelante, pág. 82.

información relacionada con ese estatuto. Pese a lo anterior, la Sección 2(i) del By-Law 32 en el inciso (o) prescribe que cualquier suspensión o sanción determinada por el Comité Ejecutivo será efectiva al momento de cualquier comunicación oral o escrita con el colegio.[27]

A su vez, el By-Law 32 en la Sección 7 dispone que proceden las siguientes sanciones en caso de que una escuela miembro, equipo o atleta incurriera en alguna infracción grave según establecido por el By-Law 33-E:

Section 7. If, upon investigation and decision of the Executive and Evaluation Committee, a school, team, coach, athlete, team follower and/or spectator should be judged guilty of any of the serious infractions contemplated in **By-Law 33 E**:

a. A school may be subject to censure and/or fines. Removal of censure will require compliance with the recommendations of the Executive and Evaluation Committee. In addition, the Executive and Evaluation Committee may recommend to the council that a school's entire athletic program be placed on probation or that the school be suspended from the Alliance.

b. An athletic director, coach and/or member of a team's personnel may be subject to censure, fines, probation and/or suspension.

c. A team and/or student athlete may be subject to censure, probation and/or suspension.

d. The game or contest during which the infraction occurred will be forfeited if won by the violating school.

e. During the appeal process the decision of the Executive Committee will remain in effect.[28]

Cabe destacar que, la disposición precitada alude al By-Law 33-E. No obstante, ante la dificultad para identificar dicho estatuto, a continuación, se citan los siguientes preceptos que hacen referencia a dos incisos bajo la letra (e):

By Law 33. Trophies and Awards

**e. Individual medals will be given to championship tournament winners in boys and girls tennis.**

.    .    .    .    .    .    .    .

Section 10. Individual medals will be given to the Post Season Championship Tournament winners (Gold) and Runner-up (Silver) in each sport, male and female, at the varsity, junior varsity, and junior high levels, as follows:

a) Volleyball – 14

b) Basketball – 15

c) Soccer - 19

---

[27] Apéndice de la parte apelante, pág. 82.
[28] Apéndice de la parte apelante, págs. 82-83.

d) Futsal - 12

**e) Baseball – 19**

f) Golf - 5

g) Softball – 19

h) Tennis - 5

i) Bowling – 6

j) Beach Volleyball - 4 for each category

k) Table tennis - 4 for each category[29]

De igual modo, en continuidad al asunto de las sanciones, la Sección 8 del By-Law 32 dispone lo siguiente con relación a los procesos de probatoria y suspensión:

> Section 8. Probation of a school's entire athletic program and/or suspension from Alliance activities can be decided only by the Alliance Council:
> a. Upon recommendation of the Executive and Evaluation Committee or motion at a Council meeting, a school may be considered for probation or suspension.
>
> b. Probation will be for a minimum of one year and makes a school ineligible for all trophies, awards and participation in championship tournaments. Individual athletes remain eligible for individual awards and recognition including participation in post season tournaments in cross country, golf, swimming and track & field.
>
> c. Suspension results in loss of membership. After a full year of suspension, a school can apply for probationary membership.[30]

Ahora bien, respecto a aquellos casos no contemplados en este cuerpo legal, el By-Law 36 permite tomar una decisión a la luz de las siguientes consideraciones:

> On any matter not covered by this Constitution and By-Laws, the Council may take any action that it deems in the best interest of the Alliance and/or in the best interests of athletic competition.[31]

Ante la inconformidad con una determinación de la Liga, la R-14 del By-Law 39 provee un proceso de apelación según descrito a continuación:

> A party may appeal from the decision of the Executive Committee PRHSAA, insofar as the statutes or regulations of the said body so provide with regards to the rules of eligibility and disciplinary actions taken by the Executive Committee, in which the penalty/sanctions rendered by the Executive Committee includes suspension of a student/player of two (2) or more games and insofar as the appellant has exhausted the remedies available prior to the appeal, in accordance with the statutes or regulations of said sports body.[32]

---

[29] Apéndice de la parte apelante, pág. 84.
[30] Apéndice de la parte apelante, pág. 83.
[31] Apéndice de la parte apelante, pág. 86.
[32] Apéndice de la parte apelante, págs. 88-89.

Por su parte, la R-3 bajo este estatuto prescribe lo atinente a la representación de las escuelas miembros ante el Comité Evaluativo:

> The parties (member schools) may be represented or assisted by persons of their choice. The names, addresses, telephone and facsimile numbers of the persons representing the parties (i.e. School Administrator, Director of the Athletic Department and/or a Full/Time member of said Department) shall be communicated to the PRHSAA Office, the other party and the Committee after its formation.[33]

En torno a la notificación y la comunicación a las partes, la R-4 prescribe la siguiente consideración:

> All notifications and communications that the AC-PRHSAA or the Panel intend for the parties shall be made through the PRHSAA. The notifications and communications shall be written in Spanish or in English and sent to the address shown in the statement of appeal, or to any other address specified at a later date. All decisions and/or orders made by the AC-PRHSAA and the Committee shall be notified by any means permitting proof of Committee. All communications from the parties intended for the AC-PRHSAA or the Committee, including statement of appeal, as well as the reply shall be sent to the PRHSAA in as many copies as there are parties and committee members, together with one additional copy for the PRHSAA itself.[34]

En este proceso el Comité podrá actuar de manera expedita, sin embargo, deberá contar con el consentimiento de las partes, según establece la R-11 de la mencionada disposición.[35] Por su parte, la R-19 provee la oportunidad para celebrar una audiencia y en su consecuencia, revisar los hechos objetos de disputa:

> The AC-PRHSAA shall have full power to review the facts and the law. Upon transfer of the file, the President of the Appeals Committee shall issue directions in connection with the hearing for the examination of the parties, the witnesses if necessary, as well as for the oral arguments. He may also request any other communication of the file of the disciplinary tribunal or similar body, the decision of which is subject to appeal.[36]

En cuanto el derecho aplicable, la R-12 del By-Law 29 preceptúa que el Comité resolverá la disputa de acuerdo con las reglas de PRHSAA o las regulaciones bajo las leyes de Estado Libre Asociado de Puerto Rico.[37] Considerado lo anterior, el Comité emitirá una decisión con la mayoría de los votos según contemplado en la R-22:

---

[33] Apéndice de la parte apelante, pág. 87.
[34] Apéndice de la parte apelante, pág. 87.
[35] Apéndice de la parte apelante, pág. 88.
[36] Apéndice de la parte apelante, pág. 88.
[37] Apéndice de la parte apelante, pág. 90.

The decision shall be rendered by a majority vote, or in the absence of a majority, by the President of the Committee alone. It shall be written, dated and signed. The decision shall state brief reasons. The signature of the President shall suffice. The AC-PRHSAA may decide to communicate the decision to the parties, prior to the reasons. The decision shall be final from such written communication.

The decision shall be final and binding upon the parties. It may not be challenged by way of an action for setting aside the decision because the parties expressly excluded all setting aside proceedings by agreeing to this Procedural Rules or in an agreement entered into subsequently, in particular at the outset of the appeal.

The decision shall be communicated to the parties within ten (10) working days after the filing of the answer of respondent such time-limit may be extended by the Executive Committee of the PRHSAA upon a motivated request from the President of the Appeals Committee. The decision or a summary setting forth the results of the proceedings shall be filed with the PRHSAA. The decision shall become effective immediately.[38]

## H.     Teoría Contractual en el contexto de Reglamentos Adoptados por Entes Privados

Como es sabido, los contratos son negocios jurídicos bilaterales que constituyen una de las formas de obligación. 31 LPRA sec. 9751; *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2000). Se ha reconocido reiteradamente que en Puerto Rico aplica el principio de la libertad de contratación. *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez de Choudens v. Rivera* 165 DPR 1, 17 (2005); *Arthur Young & Co. v. Vega III*, 136 DPR 157, 169 (1994). De acuerdo con este pilar, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 9753; *Engineering Services v. AEE,* 209 DPR 1012, 1027 (2022); *Álvarez de Choudens v. Rivera*, supra, pág. 18. Esto posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5. El contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. 31 LPRA 9754; *Cruz Cruz y otra v. Casa Bella Corp*. y otros, 2024 TSPR 47.

Para que una relación contractual se perfeccione deben concurrir los elementos de consentimiento, objeto y causa. 31 LPRA sec. 9771; *Cruz Cruz*

---

[38] Apéndice de la parte apelante, pág. 90.

*y otra v. Casa Bella Corp.* y otros, supra; *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 999 (2009); *Bosques v. Echevarría*, 162 DPR 830, 836 (2004). A partir de la existencia de un contrato, sus estipulaciones obligan al cumplimiento de lo expresamente pactado y a las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. 31 LPRA sec. 9757. De igual modo, una vez perfeccionado, el contrato producirá efecto entre las partes y sus herederos, salvo que existan derechos y obligaciones no transmisibles. 31 LPRA sec. 6301. En términos de interpretación contractual, el análisis que debe seguir el foro judicial deberá estar enmarcado en el principio de la buena fe. S*.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 727 (2001). Si los términos de un contrato "son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas." 31 LPRA sec. 6342. En los casos en que de las cláusulas pactadas no surja la voluntad expresa de los contratantes, se deberá examinar la intención contractual mediante los actos anteriores, coetáneos y posteriores al perfeccionamiento del contrato. *Pérez Rodríguez v, López Rodríguez et al.*, 210 DPR 163, 187 (2022). En dicho examen se tomará en consideración la totalidad de las circunstancias y de existir alguna ambigüedad contractual deberá resolverse contra quien la provocó. *Municipio Mayagüez v. Lebrón*, 167 DPR 713, 724 (2006). Cabe añadir, que en el ejercicio de interpretar un contrato "no se puede buscar oscuridad ni tergiversar la interpretación de [este] para llegar a resultados absurdos e injustos." *S.L.G Irizarry v. S.L.F. García,* supra, pág. 726.

En lo atinente, "los reglamentos de una organización son parte del contrato que regula la relación entre dicha entidad y sus miembros. En ese sentido, los reglamentos constituyen la ley entre las partes, en tanto no atenten contra el ordenamiento jurídico, la moral ni el orden público". *Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros*, supra. De manera que los miembros de una asociación acuerdan regirse y someterse a la referida reglamentación. *Íd.* Estos reglamentos generan

derechos y obligaciones vinculantes para las partes que deben ejercitarse conforme al principios de la buena fe. *Íd.*

**III.**

En el recurso presente, PRHSAA señala que incidió el Tribunal de Primera Instancia al expedir una orden de *injunction* permanente a los fines de dejar sin efecto una sanción probatoria impuesta al CSI. En específico, sostiene que no procedía conceder dicho remedio pues los apelados no incluyeron a las escuelas adscritas a la Liga como partes indispensables, y a su vez, carecen de legitimación activa. Sobre este particular, argumenta que el foro sentenciador erró al conceder el *injunction* a la luz de La Carta de Derechos del Estudiante, *supra.* Plantea que esta ley no le aplica porque no es una institución educativa. A base de tales argumentos, arguye que procede desestimar la presente reclamación por no aducir alegaciones que justifiquen la concesión de un remedio por insuficiencia de prueba.

En oposición, la parte apelada alega que no incluyó a las demás escuelas adscritas a la Liga por no resultar afectadas tras la imposición de la sanción dirigida únicamente al CSI. Respecto al señalamiento de falta de legitimación activa, aduce que los estudiantes-atletas han sufrido un daño inminente. En lo pertinente, especifica que se han visto afectados por la drástica sanción impuesta a todos los equipos del colegio, lo cual implica que no pueden participar de la postemporada organizada por la PRHSAA. Aduce, además, que tal determinación les priva de oportunidades universitarias y del recibimiento de becas. Al respecto, manifiesta que, pese a la gravedad de la sanción, los By-Laws de PRHSAA no contemplan un mecanismo procesal para revisar su determinación. Ante esa realidad, arguye que el referido cuerpo normativo constituye una relación contractual según reconocido en *Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros,* supra. Así expuesto, puntualiza que el tribunal sentenciador concedió el remedio extraordinario impugnado a tenor con la Regla 57 de Procedimiento Civil, *supra.* Por tanto, argumenta que no incidió al denegar

las solicitudes de desestimación al amparo de las Reglas 10.2(5) y 39.2(c) de Procedimiento Civil, *supra.*

Tras un análisis detallado y minucioso de la totalidad del expediente y la transcripción de la vista en su fondo ante nuestra consideración, determinamos que procede *confirmar* el dictamen apelado. Veamos.

En el presente caso coexisten varios planteamientos jurídicos dirigidos a nuestra autoridad para revisar los méritos de la controversia y la procedencia del remedio extraordinario peticionado por la parte apelada. Siendo así, atenderemos en forma conjunta los argumentos relacionados a nuestra jurisdicción y eventualmente procederemos a examinar la validez del interdicto permanente concedido por el foro sentenciador.

Entre sus alegaciones, PRHSAA sostiene que la parte apelada no cumple con los criterios de la doctrina de legitimación activa. Particularmente aduce que la aludida parte no fundamenta su causa de acción en alguna disposición legal o en la constitución. En atención a tales alegaciones, puntualizamos a la luz del marco legal esbozado que, la normativa de legitimación activa debe su existencia a la autolimitación judicial que parte del principio de que los tribunales solo atenderán casos y controversias justiciables. La referida doctrina se fundamenta en una serie de requisitos, los cuales deben ser demostrados por la parte reclamante para lograr obtener un remedio judicial. Revisado el presente caso a tenor con esta doctrina, disponemos que la parte apelada cumple con cada requisito de legitimación activa.

En primera instancia, concluimos que los estudiantes atletas en cuestión sufrieron un daño claro y palpable. Ello así, dado que la sanción impuesta al CSI les negó la posibilidad de competir en la postemporada deportiva celebrada por PRHSAA. Cónsono con lo anterior, estos fueron directamente afectados por una sanción que se impuso en forma general al colegio. Es decir, dicha sanción aplicó a todos los equipos en todas las categorías por igual independientemente de la existencia de estudiantes atletas que cumplieran cabalmente con los estatutos de PRHSAA. A pesar

del impacto directo de esta determinación, PRHSAA no notificó a los estudiantes-atletas de la sanción en controversia. Además, tampoco los By-Laws adoptados le concedían algún derecho para revisar la sanción emitida. En vista de ello, determinamos que el daño de la parte apelada resulta ser de naturaleza real, inmediata y precisa.

De otra parte, notamos que existe una relación entre el daño sufrido y la causa de acción ejercitada, pues el remedio interdictal solicitado surge a los fines de dejar sin efecto la sanción probatoria en controversia. Finalmente, observamos que la causa de acción se ampara en La Carta de Derechos del Estudiante, *supra*, y la relación contractual tripartita que existe entre PRHSAA, el CSI y los estudiantes. La referida legislación le concede a los estudiantes tanto de instituciones públicas como privadas, la oportunidad de acceder a los tribunales para hacer cumplir el derecho a un debido proceso de ley que les asiste en cualquier acción disciplinaria. También contemplamos que la reclamación se ampara en la relación contractual existente entre las partes, pues los estatutos de PRHSAA contienen una serie de deberes y obligaciones que deben cumplir los estudiantes atletas. Por consiguiente, concluimos que la causa de acción de la parte apelada surge al palio de la ley y de la aludida relación contractual.

Por otro lado, la Liga sostiene que no podemos conceder un remedio para este caso debido a la ausencia de una parte indispensable. Sobre el particular, argumenta que las escuelas que son miembros de PRHSAA debieron ser incluidas como partes indispensables porque el interdicto peticionado afectaría los "rankings" y las premiaciones de los equipos de demás escuelas adscritas a la Liga.

Conforme al derecho aplicable, repasamos que la doctrina de parte indispensable surge del principio el cual establece que no se puede dictar un decreto completo en ausencia de las personas que tengan un interés común en la adjudicación de la controversia. Ahora bien, el interés de dichas personas debe de ser de tal magnitud que un dictamen en su ausencia les cause una lesión a los derechos que les asisten.

Al evaluar las circunstancias particulares de este caso, no surge que la concesión de un remedio completo afecte a las otras escuelas afiladas a PRHSAA. Estas no recibieron la sanción que se impugna por la parte apelada. Ni los efectos de tal determinación, tales como la probatoria o multas monetarias, han sido extendidos a estas instituciones educativas. A su vez, la sanción probatoria surge de una decisión emitida por PRHSAA como organización privada, por lo cual, no constituye un acto individual bajo el nombre de una escuela particular miembro de PRHSAA. En vista de ello, determinamos que las escuelas adscritas a la Liga no tienen un interés real e inmediato en el presente litigio sin cuya presencia la adjudicación de la controversia constituya una privación a su debido proceso de ley.

Superado el análisis de justiciabilidad, nos corresponde atender los señalamientos de error vinculados con la denegatoria de la desestimación solicitada al amparo de las Reglas 10.2(5) y Regla 39.2(c) de Procedimiento Civil. Respecto a estos dos errores, la parte apelante sostiene que procede la desestimación de la reclamación por esta no presentar alegaciones que ameriten la concesión de un remedio. Agrega que también corresponde la desestimación por insuficiencia de la prueba.

En atención de estos dos errores, evaluamos inicialmente la petición de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*. Luego de examinar la solicitud desestimatoria en conjunto con el material probatorio, resolvemos que el foro primario no incidió al denegar la solicitud al amparo de la precitada regla. En el proceso de revisión analizamos detenidamente el contenido de la *Demanda Jurada* instada por los progenitores en representación de los estudiantes-atletas. Contemplamos un total de ciento veinticinco (125) alegaciones que cumplen con el estándar de suficiencia y especificidad establecido por nuestro esquema procesal. En la acción incoada constan una serie de alegaciones que impedían que el tribunal acogiera la vía desestimatoria. Al respecto, destacamos las siguientes alegaciones contenidas en la presente acción legal:

35. [E]l Reglamento del PRHSAA ni tan siquiera contempla la posibilidad de que los estudiantes menores y los padres afectados puedan solicitar la revisión o apelación de estas sanciones, pues limita el proceso de apelación y el concepto de parte a las escuelas miembros ("member schools"). Véase BY-LAWS 38 & 39. APPEALS COMMITTEE OF THE PRHSAA, Exhibit 5, págs. 38-43.

36. De hecho, la PRHSAA se niega a recibir comunicaciones o escritos directamente de los padres y los estudiantes con relación a este asunto, manteniéndolos así en un estado de total indefensión con relación a los derechos contractuales y estudiantiles de sus hijos.

37. Es decir, los estudiantes menores y los padres afectados por esta determinación no tienen disponible un remedio adecuado en ley para cuestionar las sanciones impuestas, a pesar de que estas afectan sustancialmente sus derechos contractuales y sus intereses propietarios como estudiantes del CSI y miembros de equipos deportivos que forman parte de la Liga.

38. El alcance severo, desproporcionado y excesivo de las sanciones impuestas por la parte demandada, particularmente al prohibir a todos los equipos del CSI en todas sus categorías a participar de las fases de postemporadas de la Liga, es irrazonable, arbitrario y caprichoso. Además, provoca un daño irreparable a los estudiantes menores aquí demandantes y sus respectivos padres.[39]

Cónsono con lo anterior, la parte apelada también abordó en sus alegaciones aquellos hechos relativos a la expedición del interdicto permanente. A esos fines, resaltamos las siguientes alegaciones:

48. Por tanto, constituye una medida irrazonable, desproporcionada, arbitraria y caprichosa de la parte demandada privarle a JASN, HFCD —y a los demás estudiantes atletas demandantes que se encuentran en posición similar— la oportunidad de participar y competir en la postemporada de la Liga del PRHSAA, sin tan siquiera haberle concedido a estos y a sus padres la oportunidad de ser oídos y exponer su posición al respecto.

49. Esta sanción es arbitraria e irrazonable por razón de su alcance severo y excesivo, pues la Liga del PRHSAA –y específicamente su postemporada– constituye el foro deportivo principal para los estudiantes atletas en Puerto Rico en sus respectivos deportes y categorías.

50. Peor aún, esta medida disciplinaria es arbitraria y caprichosa debido a que, por información o creencia, no existe uniformidad en su aplicación por parte de la PRHSAA. A modo ilustrativo, ciertos demandantes tienen información y creencia de que han ocurrido situaciones similares en el pasado en los equipos de otras escuelas (en los que un estudiante de cierto grado cumplió una edad mayor a la que corresponde según el reglamento antes del 1 de septiembre y aun así formó parte del roster del equipo) sin que ello hubiese redundado en sanción alguna para ese equipo o sus jugadores individuales. Mucho menos esto tuvo la consecuencia en el pasado de una sanción tan excesiva y severa como la aquí impuesta para prohibir a todos los equipos de todos los deportes y categorías de la escuela participar y competir en la postemporada del año académico siguiente. Todo esto apunta a una aplicación selectiva, y por ende arbitraria, irrazonable y caprichosa y contra los actos propios de la parte demandada con respecto al CSI y sus respectivos estudiantes en comparación con los estudiantes de otras escuelas y programas deportivos.

---

[39] Apéndice de la parte apelante, págs. 10-11.

51. Además, esta sanción provoca un daño irreparable a todos los estudiantes atletas del CSI y sus respectivos padres porque estos no tienen disponible ningún remedio adecuado en ley para cuestionar o solicitar la revisión tales sanciones, las cuales inciden directamente sobre sus derechos contractuales y propietarios como estudiantes y miembros de los equipos deportivos que forman parte de la Liga del PRHSAA.

52. Más aún, estas determinaciones de la PRHSAA también provocan un daño irreparable en la medida en que los estudiantes atletas aquí demandantes son menores de edad y como tal, solo tendrán la oportunidad de participar en estos eventos en sus respectivos años, grados y equipos una vez en la vida. Dicha participación forma parte esencial de su formación estudiantil de cara a la vida universitaria.[40]

A la luz del marco legal discutido, hemos considerado como ciertos todos los hechos alegados en conjunto con el material documental anejado a la *Demanda Jurada*. A su vez, interpretamos las alegaciones de la forma más favorable a la parte demandante en garantía de su derecho a un día en corte. Efectuado ese análisis, concluimos que actuó correctamente el tribunal de instancia al denegar la desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*. Los hechos alegados en la reclamación han sido aseverados de manera clara y concluyente. Ante tales alegaciones, resolvemos que se deduce con toda certeza que la parte apelada pudiese tener un derecho a un remedio en ley de probarse los hechos aludidos.

Atendido el señalamiento anterior, procedemos a abordar el error alegado al amparo de la Regla 39.2(c) de Procedimiento Civil, *supra*, por insuficiencia de la prueba. Tras evaluar el material probatorio que consta en el expediente apelativo, resolvemos que el foro primario actuó conforme a derecho al denegar la desestimación peticionada en virtud de la regla procesal aludida. Notamos que las alegaciones presentadas debidamente probadas con la evidencia sometida no permitían acoger la desestimación solicitada por la parte demandada-apelante bajo dicho fundamento. Surge de los testimonios presentados y el resto de la prueba documental estipulada que los estudiantes-atletas enfrentaron un proceso en el cual la Liga le impuso una sanción, que les privó de participar de la postemporada. La totalidad de la prueba desfilada corrobora que ni siquiera tuvieron la

---

[40] Apéndice de la parte apelante, págs. 13-14.

oportunidad para cuestionar tal determinación. Ante este examen probatorio, concluimos que la prueba sometida por la parte apelada es suficiente para sostener sus alegaciones.

Atendido lo anterior, pasamos a resolver la controversia sobre el vínculo contractual entre PRHSAA y los estudiantes-atletas. Una vez abordado este asunto, atenderemos los méritos de la sanción probatoria en cuestión.

En lo atinente a la existencia de una relación contractual, PRHSAA plantea que el único pacto existente es entre el CSI y PRHSAA. Por consiguiente, argumenta que no existe algún acuerdo contractual con los estudiantes-atletas. Fundamenta su posición bajo el hecho de la inexistencia de un contrato escrito entre la Liga y los estudiantes. Agrega que tampoco median los elementos de consentimiento, objeto y causa para el perfeccionamiento de algún contrato.

De entrada, establecemos que no le asiste la razón, pues los reglamentos de una entidad privada son parte del contrato entre dicha institución y sus miembros. En el presente caso, los By-Laws promulgados por PRHSAA constituyen el cuerpo normativo que genera derechos y obligaciones entre PRHSAA, las escuelas adscritas y los estudiantes-atletas. Si bien la Liga se compone de veintisiete (27) escuelas, las cuales ha suscrito una serie de acuerdos, ello no es óbice para reconocer la existencia de otros acuerdos que afectan de forma directa e individual a cada estudiante-atleta.

Cónsono con lo anterior, determinamos que los By-Laws en cuestión crean un efecto vinculante entre los estudiantes atletas y PRHSAA. Ello así, toda vez que, los referidos estatutos contienen disposiciones que aplican a cada estudiante-atleta de forma particular. Específicamente, estos pueden ser sancionados a nivel individual por incumplir con la constitución y los By-Laws. Adviértase que las sanciones impuestas a estos estudiantes oscilan desde la censura hasta la suspensión. A su vez, los By-Laws incluyen regulaciones relacionadas a las premiaciones individuales de estudiantes-

atletas.[41] Por consiguiente, reiteramos que dichas disposiciones generan una relación directa de PRHSAA con cada estudiante más allá de la relación existente entre PRHSAA y las escuelas afiliadas a la entidad apelada. Siendo así, reiteramos que los By-Laws constituyen la ley tanto para las escuelas como para sus estudiantes-atletas.

Resuelta la controversia sobre la existencia de la relación contractual, procedemos a auscultar nuestra facultad para intervenir en las determinaciones de PRHSAA. En lo pertinente, recapitulamos que nuestro más Alto Foro ha avalado la procedencia de la intervención judicial para examinar decisiones emitidas por las asociaciones privadas en las siguientes instancias:

> [C]uando no se satisfagan los requisitos mínimos exigibles en virtud de la relación contractual, cuando las determinaciones de una asociación sean arbitrarias, caprichosas o irrazonables, así como, cuando la parte esté expuesta a un daño irreparable y a la ausencia de un remedio eficaz, completo y adecuado. *Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros,* supra.

Considerada esta normativa jurisprudencial, resolvemos que estamos en posición de intervenir para evaluar la sanción impuesta por la Liga. En primer lugar, señalamos que los estatutos de PRHSAA no contemplan un proceso de revisión de aquellas sanciones que afectan a los estudiantes-atletas. De igual modo, contemplamos que la referida sanción es irrazonable a la luz de las disposiciones de los By-Laws de la institución apelante.

En esa línea, resaltamos que el Comité Ejecutivo de PRHSAA tiene la facultad de imponer sanciones por el incumplimiento de los criterios de elegibilidad. De hecho, el cuerpo normativo de la Liga dispone que el quebrantamiento de estos criterios amerita una sanción severa. No obstante, pese a su transcendencia, los By-Laws en cuestión son inexactos e incompletos en cuanto a la regulación de la sanción y el proceso para su imposición. A continuación, atenderemos este particular.

Conviene destacar que, el proceso de imposición de sanciones está principalmente esbozado en el By-Law 32. A esos fines, la Sección 2 inciso

---

[41] Véase los By-Law 32 Sección 1 y 7; y el By-Law 33 en el *Apéndice de la parte apelante*, págs. 80 y 82.

(i) del referido By-Law 32 contempla una suspensión de un (1) año para aquellas escuelas que incumplen con los estatutos. Sin embargo, este estatuto carece de un lenguaje completo y preciso en cuanto a las personas que tienen la legitimidad para recomendar la sanción de suspensión.

En el caso específico de las sanciones por inelegibilidad, identificamos un escenario similar al anterior en el By-Law 32 de la Sección 5(b). Notamos que el aludido By-Law se limita a catalogar la falta de un jugador elegible como una sanción seria, pero no contiene información precisa en cuanto a la conducta sancionable y el proceso para su atención. Puntualizamos, también, que la situación de imprecisión persiste en la referida sección al aludir al By-Law 10A-0. Este último estatuto es inexistente en el cuerpo normativo que obra en el expediente apelativo.

Más adelante en el texto, igualmente analizamos el By-Law *32* Sección 7, el cual preceptúa que las sanciones graves o serias están contempladas en el By-Law 33 E. No obstante, el referido By-Law 33 E tampoco surge entre los estatutos adoptados por la Liga. Tan solo percibimos que el By-Law 33 contiene dos (2) incisos que hacen referencia a la letra minúscula (e). Estos, sin embargo, no incluyen alguna disposición sobre la sanción, pues solo establecen aspectos dirigidos a las regulaciones de los premios por campeonatos.

En el proceso de revisión, también analizamos el By-Law 32 de la Sección (8) el cual hace referencia a la suspensión y a la imposición de las medidas probatorias. No obstante, este guarda silencio respecto a la imposición de una sanción probatoria que se extienda a la competición de las escuelas en todos los torneos de postemporada.

Asimismo, evaluamos el By-Law 36 por ser el estatuto que la Liga alude para apoyar la procedencia de la sanción probatoria. Precisamos que el referido estatuto autoriza al Comité Ejecutivo de PRHSAA a efectuar cualquier acción conforme a los mejores interese de los torneos atléticos y de PRHSAA. No obstante, advertimos que la aplicabilidad de dicha disposición se extiende únicamente a los asuntos que no hayan sido

contemplados dentro de los By-Laws. Ahora bien, según expuso la parte apelante —a pesar de las imprecisiones señaladas— los By-Laws previamente discutidos motivaron la medida impuesta. Considerado este argumento, razonamos que el By-Law 36 no aplica al presente caso.

En aras de sostener nuestra determinación, especificamos, además, que la naturaleza contractual de los By-Laws requiere que interpretemos los estatutos de PRHSAA conforme a la teoría contractual imperante en nuestro ordenamiento jurídico. En efecto, determinamos que las partes deben actuar según el principio de buena fe contractual.

Como parte nuestra interpretación sobre los estatutos en cuestión, concluimos que la Liga adoptó los By-Laws sin la participación de los estudiantes-atletas. Este proceder convierte a este cuerpo de normativo en un contrato de adhesión. Por lo que, sus disposiciones se analizan del modo más favorable a la parte que no colaboró en su redacción. Véase, *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 176-177 (2011). En vista de ello, a la luz de este principio contractual, enfatizamos que la imprecisión y confusión exhibida en los aludidos By-Laws, debe resolverse en contra de la parte que provocó la ambigüedad. Véase *Municipio Mayagüez v, Lebrón*, supra.

De conformidad con lo anterior, nos corresponde destacar que el CSI y PRHSAA ostentan una obligación compartida respecto a los hechos que motivaron la sanción impugnada. Al respecto, no existe controversia sobre el deber del Comité Ejecutivo de verificar los "rosters" de los estudiantes atletas.[42] Tampoco está en controversia que el Comisionado de voleibol juvenil para el año 2023-2024 incumplió con su deber reglamentario de verificar el "roster" que motivó la sanción en disputa.[43]

Así establecido, destacamos que el By-Law 9 les exige a las escuelas adscritas a la Liga revisar los criterios de elegibilidad de sus estudiantes-atletas. Similar deber tiene PRHSAA, quien también le compete examinar

---

[42] Véase, la Transcripción de la Vista en su Fondo, pág. 373.
[43] Véase, la Transcripción de la Vista en su Fondo, pág. 353.

que los equipos constituidos por estudiantes-atletas cumplen con los criterios de elegibilidad. Sin embargo, en el presente caso, la Liga y el CSI descubrieron el lamentable error objeto de la sanción tras culminar la temporada deportiva del año 2023. Puntualizamos que dicha temporada inició en septiembre de 2023, pero la investigación que motivó la sanción se llevó a cabo en febrero de 2024.[44] En vista de que la sanción impuesta por la Liga no se sostiene con el lenguaje de los By-Laws y el evidente incumplimiento del CSI y la Liga con las propias disposiciones que regulan sus actuaciones, concluimos que la sanción probatoria es irrazonable, caprichosa y arbitraria.

Así los hechos, por último, nos corresponde evaluar si el foro primario actuó conforme a derecho al expedir el injunction permanente. Respondemos en la afirmativa, toda vez que las circunstancias del presente caso exhiben dos elementos cruciales para decretar este remedio extraordinario: (1) un daño irreparable y (2) ausencia de un remedio adecuado en ley. Veamos.

Antes el estado de indefensión de los estudiantes y amparados en el principio de buena fe que rige las relaciones contractuales, disponemos que la actuación sancionadora constituye un daño irreparable. En esa dirección, reiteramos que los estudiantes-atletas no contaron con un remedio adecuado para cuestionar la sanción ante la Liga. En vista de estas circunstancias, determinamos, al igual que el tribunal sentenciador, que la sanción impuesta resulta arbitraria, desproporcionada e irrazonable. Enfatizamos que la determinación de PRHSAA no se sostiene a la luz de un examen de razonabilidad basado en el marco legal reseñado. Consecuentemente, contraviene con los derechos de los estudiantes, particularmente, el derecho a ser escuchado en cualquier proceso disciplinario, según contemplado en el Artículo 4(16) de La Carta de Derechos del Estudiante, *supra*. Por tanto, resolvemos que no incidió el Tribunal de Instancia al emitir un injunction permanente al amparo de la

---

[44] Véase, la Transcripción de la Vista en su Fondo, pág. 357.

Regla 57 de Procedimiento Civil, *supra*, a los fines de dejar sin efecto la sanción y decretar la continuidad de las actividades deportivas.

**IV.**

Por los fundamentos que anteceden, Confirmamos la *Sentencia* apelada. En cuanto a la *Solicitud de Permiso para Exceder Número de Páginas* en la presentación del *Alegato en Oposición,* este Tribunal autoriza el exceso de páginas.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones